JOHN A. BELL, EDGAR ILES, MILTON A. FRETT and
BENT LAWAETZ, Plaintiffs

v.

JUAN LUIS, Governor of the Virgin Islands, STEPHANOS
O'REILLY, Director of the Budget, CLAUDE CHRISTIAN,
Acting Commissioner of Finance, LEO GARDNER, Assistant
Federal Programs Coordinator, ROSE GORDON, Finance
Officer, Office of Community Services, Defendants

Civil No. 81-408

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 14, 1981

MICHAEL C. MARDEN, ESQ., Chief Counsel (Legislature of the Virgin Islands), St. Thomas, V.I., *for plaintiffs*

DONALD M. BOUTON, ESQ., Acting Attorney General of the Virgin Islands, By: ARTHUR C. BRIGGS, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for defendants*

CHRISTIAN, *Chief Judge*

## MEMORANDUM OPINION

Before the Court for decision at this time is the action seeking declaratory and injunctive relief, initially commenced by the Fourteenth Legislature of the Virgin Islands, plaintiff, against Juan Luis, Governor of the Virgin Islands, Stephanos A. O'Reilly, Budget Director, Claude Christian, Acting Commissioner of Finance, Leo Gardner, Assistant Federal Programs Coordinator, and Rose Gordon, Finance Officer, Office of Community Services, defendants.

On motion of defendants, Fourteenth Legislature of the Virgin Islands was dismissed as plaintiff, and on motion of counsel to the Legislature four members of the Fourteenth Legislature, namely, Senators John A. Bell, Edgar Iles, Milton A. Frett and Bent Lawaetz, were substituted as plaintiffs.

The Court having heard the evidence adduced on behalf of plaintiffs and defendants, as well as the arguments of their respective counsel, now renders its decision as set out below.

## INTRODUCTION

At the center of this dispute is Executive Order Number 250-1982 promulgated by defendant Luis on December 3, 1981, and entitled "To Establish The Office of Community Services Within The Office of the Governor." By its terms, the Executive Order transfers the administrative functions of the Territory of the Virgin Islands Community Action Agency (CAA) to a new entity within the Office of the Governor called the Office of Community Services (OCS). In addition, the Executive Order directs that the Community Action Program Policy Advisory Board, established to administer and oversee certain activities of the CAA, be reconstituted (with certain changes in composition) as the Community Services Advisory Board. The basis for these changes is said to be Public Law 97–35, Subtitle B, by which the United States Congress has repealed Title II-A of the Economic Opportunity Act of 1964 and has established in its stead a new format for federal funding of state and territorial anti-poverty programs to be called the "Community Services Block Grant Program." It is the contention of the Governor, as set forth in the Executive Order, that this action by the Congress eliminates the "governing powers" of the Community Action Program Policy Board and in addition, requires him as chief executive officer of a territory which has already applied for and will continue to apply for funds under the new federal program to "make provision for a successor eligible entity to receive and administer community service block grants under Public Law 97–35." Plaintiffs challenge the promulgation of Executive Order 250-1982 and other actions taken pursuant thereto as unauthorized under either the new federal act or any territorial statute and unlawful under the Revised Organic Act, the basic charter for the governance of the Virgin Islands.

In order to examine the legitimacy of the Governor's action, the Court must first look to the powers granted to him by the Revised Organic Act of 1954, as amended, and the way in which such powers may "fluctuate, depending upon their disjunction or conjunction with those of" the Legislature. Youngstown Sheet and Tube Co. v. Sawyer, 343 U.S. 579 at 635 (1952) (The Steel Seizure Case) (Jackson, J. concurring). In his concurring opinion in Youngstown Sheet and Tube, Mr. Justice Jackson of the U.S. Supreme Court identified the manner in which the actions of a chief executive should be scruti-

nized when an executive order allegedly conflicts with an act of the legislature. Justice Jackson stated that when the chief executive "takes measures incompatible with the express or implied will of [the Legislature], his power is at its lowest ebb, for then he can rely only upon his own constitutional [or in the present case, Organic Act] powers minus any constitutional powers of Congress (or the Legislature) over the matter. Courts can sustain exclusive [executive] control in such a case only by disabling the [Legislature] from acting upon the subject. [Executive] claim to a power at once so conclusive and preclusive *must be scrutinized with caution*, for what is at stake is the equilibrium established by our constitutional system." Id. at 637–38 (emphasis supplied).

Applying such strict scrutiny to the Governor's Executive Order No. 250-1982, we find that it must be struck down because its promulgation goes beyond the powers given to the Governor by the Organic Act, and is not otherwise authorized by any act of congress or the Legislature of the Virgin Islands.

## I. VIOLATION OF § 11 OF THE ORGANIC ACT

Executive Order No. 250-1982 violates § 11 of the Revised Organic Act of 1954, as amended, because it is "in conflict" with valid and existing law enacted by the Legislature.

A. *Firstly, the creation (or rejuvenation) by Executive Order of the Office of Community Services and the transferring to it the functions of the legislatively created Territory of the Virgin Islands Community Action Agency is in conflict with the provisions of 3 V.I.C. § 26, a law which we conclude is still in full force and effect.*

■ Pursuant to 3 V.I.C. § 26(a), the Territory of the Virgin Islands is designated as the Community Action Agency for the Virgin Islands for purposes of participation in and compliance with the anti-poverty programs authorized by Title II-A of the Economic Opportunity Act of 1964, as amended. 3 V.I.C. § 26(b) also created the Community Action Program Policy Advisory Board to govern and administer the programs of the Community Action Agency under the Economic Opportunity Act. The Territory of the Virgin Islands Community Action Agency was thus formed as a relatively autonomous government agency intended to be placed outside the control of the Office of the Governor.

■ The Economic Opportunity Act was repealed by the Congressional legislation which created the Community Services Block Grant Program, Public Law 97–35, effective October 1, 1981. How-

ever, such legislation did not repeal 3 V.I.C. § 26 nor did it in any way extinguish the authority of the Territory of the Virgin Islands Community Action Agency or the Community Action Program Policy Advisory Board, as created by 3 V.I.C. § 26. Section 675(c)(2)(A)(i) of the new legislation specifically provides that in 1982 the State must use at least 90% of the monies made available under the Community Services Block Grant Program, to make grants to "eligible entities". Section 673(1) defines an "eligible entity" as an officially designated community action agency under the Economic Oppportunity Act. Thus, under the new law, the Territory of the Virgin Islands Community Action Agency must receive 90% of the new block grants in 1982. Furthermore, the new law requires, in all subsequent years, that "special consideration" be given to community action agencies created under the old law.

The block grant program also does not snuff out the role of the Community Action Policy Advisory Board. In § 675(c)(3) the new act discusses community action boards, saying that the board must have a certain representative constituency which is similar to that of the old law. Our Community Action Program Policy Advisory Board meets the requirements of the new act. *Nowhere* in the new act is it provided that the old community action boards *must* be abolished.

This is not to say that the Community Services Block Grant Program does not make changes in the manner in which the federal government funds anti-poverty programs. It does make changes. But the basic import of those changes is that the states (including territories) are no longer restricted in the manner in which poverty programs are organized by detailed federal laws and regulations. Rather, the states are now free to organize their programs in any mode they deem fit, so long as certain general federal policies are carried out and general accounting and reporting requirements are met.

■■■■ This case has squarely presented the issue of which branch of government is entitled to make the changes in poverty programs which are authorized, but not mandated, by the Community Services Block Grant Program. To answer this question we must look to the Revised Organic Act of 1954, as amended, and Virgin Islands law. We find that because the Virgin Islands Community Action Agency and its Policy Board were created by legislation, specifically 3 V.I.C. § 26, authority to amend reposes in the Legislature only. Section 11 of the Organic Act provides that the Governor of the Virgin Islands may not issue executive orders, that conflict with the

637

existing legislation. As 3 V.I.C. § 26 remains in full force and effect, despite the repeal of the Economic Opportunity Act of 1964, only the Legislature can act to amend or repeal 3 V.I.C. § 26. Thus, Executive Order No. 250-1982 violates § 11 of the Organic Act as it purports to create a new entity the Office of Community Services and the Office of Community Services Advisory Board, to replace the entities created by 3 V.I.C. § 26.

■ Defendants have made the argument that the legislation creating the Community Services Block Grant Program independently authorizes the Governor to act unilaterally to revise the poverty programs of the Territory, and thus allows the Governor to avoid the restrictions of § 11 of the Organic Act. We find that this interpretation of the Governor's powers under the new act is erroneous. Under that act, the Governor is charged with the duties of certifying that the Territory's program meets the general federal policy guidelines, filing the Territory's plan for poverty programs, and filing an annual audit with the Secretary of Health and Human Services. However, nowhere in the new act is there any language authorizing the Governor to unilaterally formulate the Territory's program. The new act gives the State (or Territory) the power to formulate the program, which means that State (or Territorial) procedures for the enactment of legislation must be followed. In fact, the new law assumes that it is the legislature which will be formulating the new program as § 675(b) of the act requires the *Legislature*, not the Governor, to conduct yearly public hearings on the proposed use and distribution of funds to be provided under the block grant program.

■ B. *Secondly, the provisions of the Executive Order conflict with prior acts of the Legislature which delegated the authority to administer and operate a number of local and federal anti-poverty programs, which were separate and apart from those authorized and funded by the Economic Opportunity Act, to the Community Action Agency and its Policy Board.* The uncontradicted testimony at trial was that the Legislature has given the Territory of the Virgin Islands Community Action Agency the authority to administer in addition to those funds made available under the Economic Opportunity Act, the Head Start Program, the Energy Assistance Program, the Action Program, various local and federal programs for the aged, as well as other anti-poverty programs. Executive Order No. 250-1982 states that "the administration and supervision" of all such federal and territorial anti-poverty programs are to be placed under the responsibility of a new entity, the Office of Community Services in

the Office of the Governor. This purported unilateral delegation of duties by the Governor is also violative of § 11 of the Organic Act as it conflicts with existing legislation.

II. Executive Order, No. 250-1982 also violates the 18th Clause of § 3 of the Revised Organic Act of 1954, which provides in part that:

> No money shall be paid out of the Virgin Islands treasury except in accordance with an Act of Congress or money bill of the Legislature. . . .

The Executive Order contravenes § 3 as it proposes to redirect territorial funds specifically appropriated to an existing (and legislatively created) agency, the Territory of the Virgin Islands Community Action Agency, to a different entity created solely by executive order, the Office of Community Services.

For example, Bill No. 14-0467, Act No. 4634 of the Fourteenth Legislature of the Virgin Islands, approved October 13, 1981, a supplemental appropriations act, makes three specific local appropriations to Territory of the Virgin Islands Community Action Agency administered programs (the Community Action Agency Energy Assistance Program, Community Action Agency Versatile Programs, and Community Action Agency Head Start), clearly designating such appropriations to the Community Action Agency. The use of the term Community Action Agency in the Act could only refer to the then existing Territory of the Virgin Islands Community Action Agency as established by 3 V.I.C. § 26. The testimony at trial of Stephanos A. O'Reilly, Director of the Budget, was supportive of that interpretation as he indicated that such moneys were gifts to the Territory of the Virgin Islands Community Action Agency.

█ Regardless of the similarity in the mandate, functions and personnel of the legislatively created Community Action Agency, and the Office of Community Services undertaken to be created by Executive Order, they are not the same entities and therefore the appropriations made to one entity cannot be unilaterally transferred to the other entity by the Governor. In sum, if funds specifically appropriated to the Community Action Agency are spent by the Office of Community Services, such funds will not be spent "in accordance with a money bill of the Legislature" and therefore § 3 of the Organic Act will be violated.

## CONCLUSION

"The fundamental necessity of maintaining three general departments of government entirely free from the control or coercive

influence, direct, or indirect, of either of the others has often been stressed and is hardly open to question." Humphrey's Executor v. United States, 295 U.S. 602 at 629 (1935). Indeed this necessity for "checks and balances" forms the basis for our constitutional form of government and must be adhered to regardless of the immediate policy or administrative goal which the current occupants of either the legislative chambers or Government House hope to achieve. In judging the propriety of defendants' actions in the case sub judice, we should keep in mind Justice Jackson's words in the Steel Seizure Case.

> The opinions of judges, no less than executives and publicists, often suffer the infirmity of confusing the issue of a power's validity with the cause it is invoked to promote, of confounding the permanent executive office with its temporary occupant. The tendency is strong to emphasize transient results upon policies . . . and lose sight of enduring consequences upon the balanced power structure of our Republic. Supra at 634.

On all the foregoing, we conclude that Executive Order No. 250-1982, as promulgated by the Governor to the Virgin Islands is not lawful and we thus declare it null and void.

We further conclude that the application for injunctive relief should be denied in all respects, and we so hold. Such prayers for relief are rendered moot by our grant of declaratory judgment to plaintiff. Moreover, mindful of the mutual respect between the co-equal branches which our Republican form of government at once contemplates and commands, we decline to resort to the most extraordinary of the remedies known to the law. Only the most compelling of circumstances, and the total absence of other forms of relief, not the situation in this cause, would impel us to such extreme measures. The request for an injunction will, therefore, be denied.