**ADELBERT M. BRYAN, Plaintiff**

**v.**

**CHARLES W. TURNBULL, Ph.D., Governor of the U.S.
Virgin Islands, et al., Defendants**

BRYAN v. TURNBULL

Civil No. 727/2003

Superior Court of the Virgin Islands

Division of St. Croix

April 27, 2005

ADELBERT M. BRYAN, *Pro se Litigant*, Frederiksted, St. Croix, United States Virgin Islands.

*For Defendants*: ANGELA P. TYSON-FLOYD, ESQ., Department of Justice, Office of Attorney General, St. Croix, United States Virgin Islands.

ROSS, *Judge*

## MEMORANDUM OPINION

(April 27, 2005)

THIS MATTER comes before the Court on Plaintiff's action for declaratory judgment and injunctive relief, whereby Plaintiff challenges the legal propriety of Executive Orders 408-2003, 409-2003 and 410-2003 as promulgated by Defendant Governor Charles W. Turnbull, Ph.D. (the "Governor").

## I. FACTUAL BACKGROUND

On or about August 7, 2003, the Governor issued three executive orders, to wit, Executive Orders 408-2003, 409-2003 and 410-2003. Executive Orders 408-2003 and 409-2003 are Charters, which empower the U.S. Virgin Islands College of Medicine, L.L.C. (the "College of Medicine") and the Medical Faculty Foundation, L.L.C. (the "Medical Faculty Foundation") to establish privately operated medical schools in the districts of St. Croix and St. Thomas/St. John, respectively. Executive Orders 408-2003 and 409-2003 authorize the College of Medicine and the Medical Faculty Foundation to establish component colleges of medicine, dentistry, veterinary science, medical technology, physician and surgeon's assistant, public health, and biomedical and sanitary

168

engineering. Said Executive Orders set forth procedures by which the College of Medicine and the Medical Faculty Foundation shall obtain preliminary and full accreditation through requisites established by the Commissioner of Education and other relevant governing bodies. Executive Orders 408-2003 and 409-2003 further establish standards that the College of Medicine and the Medical Faculty Foundation shall maintain to remain in compliance with the terms of said Orders.

Executive Order 410-2003 purports to establish the U.S. Virgin Islands Medical School Commission (the "Medical School Commission") to oversee and regulate the Charters created by Executive Orders 408-2003 and 409-2003. The Medical School Commission is an advisory body established administratively within the Department of Education and consisting of nine voting members from the Territory, including the Commissioner of Education (as Chairman of the Medical School Commission). Pursuant to Section 7 of Executive Order 410-2003, "the Commissioner of Education shall budget and set aside each year in the Department's budget, a sum of money to be available for the administrative expenses of the [Medical School] Commission." Section 8 of Executive Order 410-2003 requires each medical school established in the Territory to pay annually an administrative fee, set by the Medical School Commission, and further authorizes the Commission to deposit said fees into a special account for its sole use.

## II. PROCEDURAL HISTORY

On or about December 3, 2003, Plaintiff filed the instant Complaint, whereby he prayed the Court to (1) enjoin Defendants from implementing Executive Orders 408-2003, 409-2003 and 410-2003 and (2) grant declaratory judgment as to the legality of said Executive Orders. Plaintiff's Complaint included allegations that the Governor exceeded his executive authority and encroached upon the powers of the Legislature of the U.S. Virgin Islands (the "Legislature") as a law-making body when the Governor issued the subject Executive Orders in violation of Sections 11 and 3 of the Revised Organic Act of 1954.

Initially, Plaintiff filed the instant action *pro se* and on behalf of and as Chairman of a group of over fifty U.S. Virgin Islands residents and taxpayers known as The Committee for Quality Assurance in the Establishment of Medical Education in St. Croix ("The Committee for Quality Assurance"). Named Defendants in Plaintiff's Complaint included

169

the Governor, Commissioner of Education Noreen Michael, Ph.D., President of the University of the Virgin Islands Laverne Ragster, Ph.D. ("Ragster"), as well as eight other heads of agencies and institutions appointed with the duties and responsibilities to execute the laws of the subject Executive Orders.

In response to the instant Complaint, Defendant Ragster timely filed an Answer and the Government of the U.S. Virgin Islands (the "Government") filed an Answer on behalf of all other Defendants. The Court entered an Order setting the trial date in this matter for February 4, 2005. On or about January 24, 2005, Defendants filed a motion for declaratory judgment or alternatively for judgment on the pleadings. On the eve of trial, Defendant Ragster filed an untimely motion for judgment on the pleadings.

In consideration of the pleadings and the parties' oral arguments at trial, the Court held that Ragster is not a proper party in this action, as Plaintiff could prove no set of facts in support of his claim that would entitle him to relief against Ragster. *See* Court's Memorandum Opinion dated February 4, 2005. In addition, the Court concluded that Plaintiff has standing to bring the instant action as a U.S. Virgin Islands taxpayer.[1] Notwithstanding Plaintiff's right to bring suit, the Court further concluded that Plaintiff is not a licensed attorney and his representation before the Court on behalf of The Committee for Quality Assurance constituted the unauthorized practice of law. Therefore, the Court dismissed the action as to all Plaintiffs except Adelbert M. Bryan as a *pro se* litigate.

At trial, the Court did not rule on the gravamen of Plaintiff's Complaint, to wit the legal propriety of Executive Orders 408-2003, 409-2003 and 410-2003, but took such issues under advisement. In consideration thereof, the Court submits the following legal analysis.

## III. DISCUSSION

### A. Executive Orders 408-2003 and 409-2003

■ Plaintiff contends that Executive Orders 408-2003 and 409-2003 are unlawful because only the Legislature is vested with the authority to unilaterally create institutions of higher education. The Court finds that this argument is of no moment. Foremost, Executive Orders 408-2003

---

[1] Under 5 V.I.C. § 80, a U.S. Virgin Islands taxpayer may sue to restrain illegal or unauthorized acts by the Governor and/or wrongful disbursement of territorial funds.

and 409-2003 do not create institutions of higher education. Said Executive Orders simply grant Charters to the College of Medicine and the Medical Faculty Foundation to authorize those entities to create privately operated medical schools in the Territory. It is the Government's policy "to encourage the establishment of non-public schools within the Territory when such schools will enhance educational opportunities" of students of the Virgin Islands "provided schools meet baseline requirements for safety, health, general welfare, financial responsibility, and scholastic standards." 17 V.I.C. § 194(a). Undeniably, medical schools in the Territory will increase opportunity for graduates of the University of the Virgin Islands to pursue medical careers. Therefore, the Governor's actions in this instance fall in-line with express public policy to encourage and improve education in the Territory.

In addition, Executive Orders 408-2003 and 409-2003 do not contravene any applicable law nor violate the limits of separation between the Governor and the Legislature as said Charters only promulgate guidelines for the College of Medicine and the Medical Faculty Foundation to establish privately operated medical schools that would meet baseline requirements as referred to in 17 V.I.C. § 194. More specifically, Executive Orders 408-2003 and 409-2003 include conditions set by the Commissioner of Education, pursuant to 17 V.I.C. § 192, *et seq.*,[2] and criteria set forth in Executive Order 410-2003. The Court finds nothing unlawful about the Governor promulgating guidelines for the College of Medicine and the Medical Faculty Foundation to follow in order to meet certain requisite criteria, especially considering there is no other law regarding the establishment of privately operated medical schools that conflicts with law referred to in Executive Orders 408-2003 and 409-2003. Furthermore, the Governor's actions here are somewhat superfluous because any private U.S. corporation or individual has the inherent prerogative to establish any privately operated school it desires so long as the legal requirements of 17 V.I.C. § 192, *et seq.*, are met.

---

[2] The Commissioner of Education is authorized by 17 V.I.C. § 192, *et seq.*, to issue certificates of accreditation and operation to private schools in compliance with standards, as cited in this Chapter, regarding the premises, equipment, curriculum and teaching personnel of private schools in the Territory.

## B. Executive Order 410-2003 and the Organic Act

The remaining issue at the center of this controversy is whether the Governor exceeded his authority or powers under the Revised Organic Act of 1954 (the "Organic Act")[3] when he issued Executive Order 410-2003. The congressional legislation referred to as the Organic Act constitutes the fundamental law of the U.S. Virgin Islands. The Organic Act bears a relation to the governmental affairs of the U.S. Virgin Islands that is similar to the relation between a state and its state Constitution. Indeed, the Organic Act is the U.S. Virgin Islands' analogue of a state Constitution. *See Brown v. Hansen*, 27 V.I. 440, 973 F.2d 1118 (3d Cir. 1992). Moreover, several of the provisions of the Federal Constitution are contained in the Bill of Rights enumerated in the Organic Act. Essentially, the Organic Act reflects fundamental rules that are inherent in the American Constitutions, to wit, rules setting forth legislative, judicial and executive powers.

According to Section 11 of the Organic Act, the Governor, as the chief executive officer of the U.S. Virgin Islands, has general supervisory control of all instrumentalities of the executive branch of the Government. Additionally, the Governor is responsible for the execution of the laws of the Government. *See* V.I. Organic Act § 11. Notwithstanding the Governor's primary executive functions as aforementioned, the Organic Act empowers the Governor to invoke lawmaking actions by granting the Governor power to issue executive orders. *See id.* Indeed, the Governor may issue executive orders so long as such orders do not conflict with valid and existing laws enacted by the Legislature. *See* V.I. Organic Act § 11.

## 1. Section 7 of Executive Order 410-2003

According to Plaintiff, two Sections of Executive Order 410-2003 specifically conflict with the Organic Act. Foremost, Plaintiff argues that Section 7 of Executive Order 410-2003 conflicts with the Organic Act as said provision, without the Legislature's approval, re-appropriates territorial funds from the Department of Education to the Medical School Commission, an entity that Plaintiff contends was unlawfully created by the unilateral actions of the Governor. Plaintiff's contention appears to

---

[3] The Organic Act, as amended, is found at 48 U.S.C. §§ 1541-1645 (1994), *reprinted in* V.I. CODE ANN.

follow the holding in *Bell v. Luis*, 528 F. Supp. 846, 18 V.I. 633 (1981) where the Court declared Executive Order 250-1982 null and void on the grounds that said Executive Order unlawfully proposed to redirect territorial funds from the Territory of the Virgin Islands Community Action Agency (CAA), a legislatively created agency, to the Office of Community Services (OCS), an entity created solely by executive order.

In *Bell,* the court found that the Legislature, pursuant to 3 V.I.C. 94, had given the CAA authority and appropriations to administer and operate a number of local and federal anti-poverty programs. Notwithstanding the Legislature's actions and in direct conflict with 3 V.I.C. 94, Governor of the U.S. Virgin Islands Juan Luis issued Executive Order 250-1982 which proposed to unilaterally transfer the administration and supervision functions of the CAA as well as the CAA's appropriations to the OCS, a new entity within the Office of the Governor. The court in *Bell* unequivocally declared that an executive order promulgated by the Governor is unlawful when it proposes to unilaterally transfer appropriations from a legislatively created agency to an entity created solely by executive order. The *Bell* Court based its holding on Section 11 of the Organic Act, limiting the Governor's power to issue executive orders so long as they do not conflict with existing law, and Section 3 of the Organic Act, which grants the Legislature exclusive power to appropriate and/or expend territorial funds.

█ Whereas the executive order at issue in *Bell* authorized the OCS to perform operational functions that 3 V.I.C. 94 authorized CAA to perform, there exists no legislatively enacted law authorizing an entity to perform oversight functions, which Executive Order 410-2003 authorizes the Medical School Commission to perform. In addition, the Governor's unilateral creation of the Medical School Commission is dissimilar to Governor Luis' unilateral creation in *Bell*. In the instant action, the Governor's creation of the Medical School Commission within the Department of Education is based on valid and existing law whereas Governor Luis' creation of the OCS did not have such a basis. *See* 3 V.I.C. § 94(a) (granting the Governor unilateral power to organize the Department of Education in a manner that provides maximum administration and responsibility) and 3 V.I.C. § 94(d) (authorizing the Governor to unilaterally create divisions within the Department and appoint division heads as may be necessary to effectively administer the Department).

173

Furthermore, Section 7 of Executive Order 410-2003 does not constitute an unlawful re-appropriation of territorial funds since Section 7 authorizes the Medical School Commission, an entity created within the Department of Education, to use funds already appropriated to the Department of Education. In this instance, the Governor is not authorizing the Commissioner of Education to take funds from the Department of Education and re-appropriate those funds to another department or agency. The Governor is simply authorizing the Commissioner of Education to direct appropriated funds from the Department of Education's lump sum budget for administrative expenses of the Medical School Commission. The Medical School Commission exists within the Department of Education and therefore has rightful access to territorial funds appropriated to the Department of Education, so long as appropriated funds are used for no other purposes except those specified in the applicable appropriations bill.

## 2. Section 8 of Executive Order 410-2003

Plaintiff further maintains that Section 8 of Executive Order 410-2003 conflicts with the Organic Act as it authorizes the Medical School Commission to establish and collect fees from medical schools and expend those fees without legislative approval. Section 8 of Executive Order 410-2003 provides, in pertinent part, that "each medical school shall pay annually, an administrative fee, set by the Commission" and said fees "shall be placed into a special account established by the Commission and may be used solely for the purposes enumerated in this Executive Order."

When the Governor promulgated Section 8 of Executive Order 410-2003, authorizing the Medical School Commission to establish and collect an administrative fee from medical schools within the Territory, he exceeded fundamental powers of the legislative branch to make laws regarding taxation. Intrinsically, a tax includes any charge of money imposed by government authority on an entity for public purposes, such as the administration costs of a government instrumentality. Executive Order 410-2003 purports to establish the Medical School Commission as a government instrumentality endowed with certain authority to provide educational and health care benefits to the people of the Territory. Accordingly, the fees imposed upon medical schools by the Medical School Commission constitute a tax. The Constitution is neither silent

174

nor equivocal about what body of government is authorized to lay and collect taxes. As a matter of fact, inherent in the American constitutional system is the exclusive right of Congress to "lay and collect Taxes, Duties, Imposts and Excises." *See* CONST. U.S., art. I, § 8.

In this instance, the power to impose taxes is a part of the legislative power granted by the Organic Act to the territorial Legislature and the power to impose taxes has always been recognized as a rightful subject of legislation. *Virgo Corporation v. Paiewonsky*, 384 F.2d 569, 6 V.I. 256 (3d Cir. 1967). Therefore, any administrative fees imposed upon medical schools in the Territory must be pursuant to some legislation. The Governor's imposition of fees under Section 8 of Executive Order 410-2003 lacked legislative authorization, and therefore said imposition is unlawful.

Furthermore, the Governor has no legitimate power to unilaterally authorize the expenditure of fees not appropriated by the Legislature. *See Chiang v. Turnbull*, 43 V.I. 49, 63 (Supr. Ct. St. C. 2000). In fact, the Organic Act places the purse strings of territorial finances in the hands of the Legislature. *See id.* (citing V.I. Organic Act §§ 3 and 9(c)). The legislative branch of government is vested with exclusive authority to appropriate government funds as well as expend any fees paid to the government. *See* CONST. U.S., art. I, § 9. There is no space here for the Governor to legitimately move into the realm of lawmaking and loosen the purse strings of territorial finances.

Accordingly, Section 8 of Executive Order 410-2003 further impinges upon the powers of the Legislature as said Executive Order authorizes the expenditure of fees paid to a government entity without the consequence of appropriation by the Legislature. Since the Medical School Commission is an instrumentality of the Virgin Islands, any fees lawfully required by and paid to the Commission should be deposited into the General Fund of the Treasury of the Virgin Islands, and not into some "special account established by the Commission." Thereupon, the Legislature is the only entity authorized to expend and/or appropriate such fees. The Medical School Commission cannot unilaterally expend government monies, even if the monies were collected to offset the Commission's administrative expenses. As a matter of fact, Section 3 of the Organic Act mandates that "[No] money shall be paid out of the Virgin Islands treasury except in accordance with an Act of Congress or

money bill of the legislature and on warrant drawn by the proper officer."

## IV. CONCLUSION

While the Organic Act empowers the Governor to exercise some legislative functioning by issuing executive orders, in no wise does it authorize the Governor to overstep the inherent constitutional powers of the legislative branch to lay and collect taxes or appropriate and/or expend government monies. The fundamental necessity of maintaining separation of powers between the legislative and executive branches of government, as well as the judicial branch, "has often been stressed and is hardly open to question." *Humphrey's Executor v. United States*, 295 U.S. 602, 629, 79 L. Ed. 1611, 55 S. Ct. 869 (1935).

When the Governor takes measures that are questionably inconsistent with the express or implied will of the Legislature, the Governor's actions "must be scrutinized with caution." *See Bell*, 18 V.I. at 635-36 quoting *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 637-38, 96 L. Ed. 1153, 72 S. Ct. 863, 62 Ohio Law Abs. 417 (1952). Applying such strict scrutiny to the instant action, the Court finds that Executive Order 410-2003 is unlawful to the extent that it authorizes the Medical School Commission to 1) establish and impose an administrative fee upon medical schools in the Territory, 2) deposit fees into a "special account established by the Commission" and 3) unilaterally expend said fees without legislative appropriation. Furthermore, the Court will uphold Executive Orders 408-2003 and 409-2003 as said Executive Orders do not go beyond powers granted to the Governor by the Organic Act nor do they unlawfully impinge upon the separation of powers between the branches of government.

Finally, the Court concludes that Plaintiff's request for injunctive relief should be denied in all respects as it is rendered moot by the Court's grant of declaratory judgment in this matter. Moreover, a preliminary injunction is viewed under the law as an extraordinary and drastic remedy, which the Court declines to resort to out of mutual respect between the co-equal branches of government.[4]

---

[4] In *Bell*, the Court declined to grant the application for injunctive relief on similar grounds of mutual respect. *See Bell*, 18 V.I. at 640.